**IN THE U.S. DISTRICT COURT
FOR EASTERN NEW YORK**

UNITED STATES OF AMERICA

Vs.                          CASE NO. 08-CR-0009-FB

BRUCE A. GORCYCA

## MOTION SEEKING DISMISSAL WITH PREJUDICE AND A CONTINUANCE TO FURTHER SUPPLEMENT THIS MOTION WITH CASE LAW

Comes now the defendant, as co-counsel with Counsel before this most Honorable Court to respectfully request dismissal of the indictment in this cause with prejudice on the grounds stated below. This motion is not frivolous and we beg the Court's indulgence in this liberty issue matter.

### GROUNDS FOR CONSIDERATION

1. Constitutional law, fundamental fairness, and precedent law guarantees all defendants due process of law including but not limited to the right to present exculpatory, alibi, and corroborating witnesses on their behalf at trial, as well as any pertinent exculpatory evidence in their defense. The 2nd Circuit Court of Appeals as well as the U.S. Supreme Court has consistently ruled, that when such witnesses and evidence are no longer available to a defendant, and said witnesses and evidence were to play a key and essential role in the defense of the defendant, the defendant is unable to obtain a fair trial, and therefore may seek a dismissal of the charges.

In the case at bar, seven key, alibi, and/or defense witnesses who were indeed available in 1999 through 2000, and some who have provided written statements, are no longer available to day in 2008 to assist in the

1

defense of the defendant. The same applies to exculpatory files and a U.S. passport surrendered to authorities (and now reported lost or misplaced to the Court) as conditions of his previous bail. These witnesses and items as explained below were and remain absolutely essential and critical to the defense of the defendant, to wit...

1. Defense witness Jon Pierre Gonyou claimed to have personal knowledge of the parties responsible for two of the frauds the government alleges were perpetrated by the defendant (LAZT &       ) and further would have testified that he personally spoke with Mr. Gorcyca in Hong Kong and not in Florida at times alleged by the government. Mr. Gonyou offered to make a video statement about these matters to assist the defendant in 2001, but died suddenly as per the death certificate previously submitted to the Court as an exhibit in a previous filing under 07-CR-608-JBW. Witness Gonyou who was a friend and a neighbour to the defendat and his wife in South Florida would have played the role of a credible defense, alibi, and corroborating witness whose testimony would be invaluable to the defendant at trial.

2. Defense witness Magaly Perez, who previously submitted a sworn statement (Exhibit A of previous dismissal motion in 07-CR-608-JBW) moved back to her native country of Ecuador and claims she never again will return to the U.S. under any circumstances. Ms. Perez is the former wife of the defendant whose alibi testimony directly impeaches allegations of the government and the time line of the alleged offense. Being a foreign national residing outside the U.S., she cannot be compelled by subpoena or other means to attend the defendant's trial. Witness Perez would through her testimony also illuminate possible ulterior motives for this prosecution as she alludes to in her statement when the she states the FBI agent said the defendant had a choice to "be a witness or a defendant". (See statement of Witness Perez).

3. Witness Scott Galin of South Florida was killed in private plane crash in 2002 and was mutual friends with both the defendant and witness John Pierre Gonyou in South Florida as all three men frequented the same Marina (Fort Apache). Mr. Galin would have testified as to statements made by Mr. Gonyou to the defendant of an exculpatory nature, and angry statements made by the defendant to witness Gonyou. Witness Galin would also have testified that he picked up the defendant at Miami International Airport and drove him home upon his return from Hong Kong in 1998, where the two also spoke by telephone on two or three occasions, again serving as a vital alibi and corroborating witness for the defendant at trial. Previous filings made to the Court in 07-CR-608-JBW contain news clippings about the sudden demise of witness Galin.

4. Martha Gorcyca the mother of the defendant would have served as a Corroborating and alibi witness for the defendant at trial but expired on June 16, 1999 following six months of hospitalization. Witness Gorcyca Would have testifies as to her sons whereabouts in 1998 and 1999 that Would have corroborated testimonies of witnesses Gonyou, Galin, and Yum, the current wife of the defendant. Certainly the Court will acknowledge that consistent testimony from multiple defense witnesses carries far greater credibility than that of the defendant or a sole FBI agent. Mrs. Gorcyca's death certificate is contained in previous filings under 07-CR-608-JBW.

5. The father-in-law of the defendant Duk "Jimmy" Yum, a retired and decorated Warrant Officer of the U.S. Army died suddenly in September of 2000 and was a defense and alibi witness for the defendant in as much as he had personal knowledge that his daughter was with the defendant in Hong Kong and Ohio in 1998, and most of 1999, NOT in Florida as alleged by the government. Witness Yum would have also testified about threats made against the defendant, one of which was made in his presence at his daughter's Canadian home in 1999 by a Russian man the FBI and RCMP claim is a multiple murder suspect.. Considering his unblemished and

3

military background, Witness Yum's testimony would have been highly credible and essential to the defendant at trial.

6. Key defense witness Alain Chalem was murdered in November of 1999 (allegedly by the same Russian mentioned in paragraph 5 above) and would have been essential and pivotal in providing exculpatory testimony on behalf of the defendant in his capacity as an FBI informant and as a business associate of the defendant and witness Gonyou. The defendant had spoke telephonically with the murder victim less than 30 days before his murder and admitted his knowledge of certain fraud perpetrated by Mr. Gonyou and his associates that are now wrongly being attributed to the defendant. That call an another with Chalem would also allow Chalem to testify that the defendant was NOT in Ohio in the spring and summer of 1999 as alleged by the government.

8. Defense and alibi witness Olga Pelko, a neighbour to the mother of the defendant on Gilbert Avenue in Parm, Ohio would not only have served as an alibi witness for the defendant for time periods in 1998 and 1999 (placing the defendant in Ohio and not Florida), but also was present when a man claiming to be an FBI agent visited the defendant's mother and made inappropriate comments indicative of abuse of process. Said comments were similar but more egregious than those made in the presence of witness Perez in Miami, as per her sworn statement. Said agent pressured the defendant's mother to "tell your son we'll lock his ass up for years unless he plays ball with us".

9. The remaining Canadian in-laws of the defendant, including the 70-year old mother-in-law, after being threatened with false and prolonged immigration detention if they attempted to help the defendant in any manner, by a U.S. agent at gun-point, now vow never to return to the United States under any Circumstances, and they too would serve as alibi and corroborating witnesses for the defense. They cannot be compelled to travel to the U.S. to attend trial by any means known to the defendant. Some of them have

4

Have already provide written statements as per previous filings in CR-07-608-JBW. None of these Canadian citizens have criminal records and their Testimony, in conjunction with that of the other witnesses above would be highly credible.

10. Documentary evidence that is no longer available to the defendant include his office files previously stored at 1221 Brickell Avenue in Miami, Florida which were trashed by the office landlord when the defendant was detained in Canada at the request of the FBI and unable to pay his storage bill. Said files would include dated receipts from Hong Kong, Ohio, and points in between proving his whereabouts, along with all pertinent client correspondence, some of which would be highly exculpatory and impeach some, but not all of the allegations made by the government. Of even more importance is the passport of the defendant (both old and new) the latter of which was surrendered by Attorney Marshal Drukarsh to Canadian Immigration authorities as required by bail conditions. (See sworn statement of Atty. Marshal Drukarsh in previous Dismissal filing) This document, previously ordered to be returned to the defendant by Judge Weinstein is now conveniently "missing" according to AUSA Tanya Hill. This passport as well as the one it replaced would show the defendant was outside the U.S. at key times the government claims he was in Florida.

11. The absence of these witnesses and evidence is exacerbated by the fact the defendant does not use credit cards and therefore cannot request other time and date stamped records of past transactions that would document his whereabouts at key periods of time between 1997-1999.

12. 10 DAYS EXPIRED BEFORE THE DEFENDANT WAS REINDICTED
On December 19, 2007 The Honorable Judge Weinstein advised the Defendant that he would be free to resume his life and travel as he wished if the defendant was not reindicted "within ten days" He did not specify if those ten days were consecutive, work days, excluding or including weekends and holidays, etc. And at that point in time, neither the defend-

5

ant, Hon. Judge Weinstein, nor anyone else in the courtroom that day, had anyway of knowing that Chief Judge Dearie would soon be proclaiming an extra Court holiday, nor was the defendant nor his counsel advised when he did. The defendant was advised by both his counsel advisor and Pre-Trial Services supervisor in Cleveland that he would be free to return home to his family in Canada if he did "not hear anything from the government or the court by Friday the 29th of December" which he was told was "the last working day before Christmas" [New Year]. The defendant signed in at Pre-Trial services on the 27th in Cleveland and waited a few more days before returning to his family in Canada. Apparently even Judge Weinstein believed the time period expired since he released the property lien used as bail security on January 14th. By our counting the 10 days would have expired on December 30th of 2007 or January 4th, 2008 as Atty. Silverman can elaborate for the court.

13. The defendant has already served 20.5 months of pre-trial detention time in extremely harsh maximum security confinement which is 2 months beyond his sentencing guidelines as calculated by the government in their previous pleas agreement offered to the defendant. 16.5 of those months were in a 6 by 9 foot lock down cell shared by two other prisoners forcing the defendant, who is diagnosed claustrophobic, to sleep on the concrete floor. Essentially the time for the alleged crime has already been served, and there is little if anything to be gained by reprosecution at this point in time.

14. There are other grounds for dismissal including statute of limitation arguments and Rule 5 violations which the defense would like to make as well as document this motion with case law.

Accordingly therefore we respectfully ask that this most Honorable Court either dismiss the reenlistment charges, or in the alternative, grant a 15 or 30 day continuance and stay of warrant so Atty. Silverman can complete, perfect, and refile a supplemental motion based on the above and other arguments if the

6

government, this Honorable Court, and Atty. Silverman have not found others means to amicably resolve adjudication of this matter.

Most respectfully submitted before this Honorable Court this 7th day of February, 2008 by the defendant acting as co-counsel until such time as he can confer with Atty. Silverman, the CJMA appointed by the Court.

The defendant hereby warrants and certifies that copies of this pleading were sent this date to the AUSA, Clerk of Courtm and Atty. Silverman.

*Bruce A. Gorcyca*
Bruce A. Gorcyca
Defendant

FROM :000    Case 1:08-cr-00009-FB    Document 3    Filed 02/08/08    Page 7 of 7 PageID #: 38    FAX NO. :00000000000    Jan. 07 2008 01:22PM   P11

7